NEW YORK LIFE INSURANCE COMPANY, Appellant, *v.* GLENS FALLS INSURANCE COMPANY, Respondent.

Order affirmed, with $20 costs and disbursements.

VAN VOORHIS, J. (dissenting). This appeal from an order denying a motion to strike out a partial defense as insufficient in law involves the applicability of the standard coinsurance provision to small losses under fire insurance policies containing the New York Standard Average Clause. After providing that the defendant insurance company " shall not be liable for a greater proportion of any loss or damage to the property described herein than the sum hereby insured bears to eighty per cent (80%) of the actual cash value of said property at the time such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon ", the New York Standard Average Clause contains a proviso which the plaintiff insured has so far contended unsuccessfully exempts small losses from such abatement. The language of this proviso is as follows: " In the event that the aggregate claim for any loss is both less than ten thousand dollars ($10,000) and less than five per cent (5%) of the total amount of insurance upon the property described herein at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required."

No particular significance attaches to the use of the word " special ", and this paragraph refers to real as well as personal property in speaking of an

"appraisement of the undamaged property", as Special Term apparently has held.

The fire insurance policy carried by defendant on appellant's thirteen-story building at 346-348 Broadway, in the city of New York, is for $150,000, which is supplemented by policies carried by two other companies in the amount of $350,000. The total insurance in force is $500,000. It has been stipulated that the decision on this appeal shall be binding in the actions pending against the two other insurance companies.

While these policies were in effect, a fire occurred in the insured premises, causing damage to a small portion of the seventh floor of the building. The appellant notified the respondent of the damage, which it estimated at $6,488.82. This was less than $10,000 and less than 5% of the total insurance in force. Following an examination by an adjuster acting for all of the insurance companies, they refused to pay the sum demanded by the appellant. As required by the policies, proofs of loss were filed.

An umpire was appointed by the Supreme Court under a clause to that effect in the policies and section 173 of the Insurance Law. The appraisers named by the parties agreed that the amount of damage was $6,296.82. The appraiser designated by the insurance companies and the umpire appointed by the court fixed $1,600,000 as the sound value of the entire building at the time of the fire. The appraiser designated by appellant declined to take part in the latter determination, deeming it irrelevent. The plaintiff conceded for the purpose of this motion only that $1,600,000 was the correct value of the entire building at the time of the fire.

On these findings the three insurance companies involved have declined to pay more than $2,459.70. This sum they arrived at in the following manner: 80% of $1,600,000 (the sound value of the insured building) is $1,280,000; under the coinsurance provision, the ratio of $500,000, the total insurance on the property, to $1,280,000 representing 80% of the sound value of the property, was applied to the full loss of $6,296.82 and resulted in the figure of $2,459.70.

The partial defense which the appellant seeks to have stricken embodies respondent's contention that under the policies these insurance carriers had the right to have appraisers report the sound value of the entire building to use as the value term of the coinsurance formula which, if applicable, would reduce the aggregate recovery in all three actions from $6,296.82, the actual loss, to $2,459.70.

The main contention of the appellant is that the object of the proviso contained in the New York Standard Average Clause, which is above set forth, is to require the payment in full of losses under $10,000 and less than 5% of the total insurance, undiminished by the coinsurance feature. The reason for exemption from abatement under the provision for coinsurance is that in the case of minor losses the fees of appraisers and the other costs of determination of the value of the entire property would be likely to approximate or exceed the amount of the loss.

The proviso in the Standard Average Clause might have been prepared with greater precision, but ambiguities in insurance policies are to be resolved, in case of doubt and uncertainity against the insurer which drew them. This rule applies even where the policy is in the standard form. (*Tonkin* v. *California Ins. Co.*, 294 N. Y. 326; *McGrail* v. *Equitable Life Assur. Soc.*, 292 N. Y. 419; *Gridley* v. *Home Ins. Co.*, 226 App. Div. 596, 599, affd. 254 N. Y. 635; *Stonborough* v. *Preferred Accident Ins. Co.*, 180 Misc. 339, affd. 266 App. Div. 838, affd. 292 N. Y. 154.)

In this context, the appellant calls attention with considerable force to an address entitled " Co-insurance " by the general adjuster of the Home Insurance Company (March 30, 1920), which is published in Association of the Bar Pamphlets (Vol. 997, p. 13). The author there stated, in respect to the paragraph now under consideration, " Many people persist in placing a wrong interpretation upon this condition, and among the number are prominent insurance agents, and even special agents and adjusters. They construe it as an absolute waiver of the co-insurance clause, evidently failing to realize that if the framers of the provision had intended it as a waiver they certainly had sufficient words at their command to so state, and would not have deliberately said something else. The clause simply says that under certain conditions no special inventory or appraisement of the undamaged property shall be required. The company may resort to any method other than this to ascertain the sound values; it may have *ex parte* estimates made; it may secure the opinion of experts; examine books of account; examine the insured under oath; insist upon the sound value being sworn to in the proofs of loss; and finally, it may let the court decide upon the value of evidence submitted."

This only emphasizes the ambiguity and indicates a practical construction of this clause in favor of appellant by a considerable number of insurance company representatives. He acknowledges that many " persist ", contrary to his personal view, " in placing a wrong interpretation upon this condition ". This indicates a substantial amount of uncertainty among insurance companies themselves, and lends support to the conclusion that the clause should be construed against the insurer. The assertion that " if the framers of the provision had intended it as a waiver they certainly had sufficient words at their command to so state " misconceives and reverses the ordinary rule of construction, which imports that if the framers of this provision had intended it to read in defendant's favor, they had ample words at their disposal to have expressed the meaning so that not only laymen but also insurance company representatives would not persist in construing it otherwise. This is especially true if, as here, the appellant's construction reaches a fair and natural result, having a basis in the practical conduct of the business. The converse is hardly true, under respondent's construction, which leaves this clause in the insurance contract with little practical purpose. If the general adoption of appellant's construction would affect the actuarial basis on which such insurance is written, the clause in question should be redrafted so as to express plainly respondent's interpretation, or the premiums on such policies should be revised upward.

Special Term, in a carefully reasoned opinion, follows in some detail the construction which is placed upon this clause in the article quoted, published in the Association of the Bar Pamphlets, viz., that this proviso does not eliminate the application of the coinsurance formula to small losses, but merely relieves the insured from furnishing an inventory or participating in or being bound by an appraisal of the undamaged property under the policy. The Special Term opinion states in this regard (184 Misc. 846, 850) : " Under this clause the company may resort to any method other than an ' appraisement ', under the policy, to ascertain the sound value of the entire property covered by the insurance. It may have ex parte estimates made, it may secure the opinion of experts, it may examine the books of account of the assured, it may examine the assured under oath. The company, in this manner, would be able to ascertain the sound value of the property and refrain from requiring the assured to go through an expensive and burdensome inventory or appraisement of the undamaged property where the loss is a relatively small one."

Such a construction would save an insured the expense of paying his own appraiser by leaving him at the mercy of the insurer in event that the latter obtains an unfair ex parte appraisal. If that is all that was accomplished, this clause might almost as well have been omitted, since if the coinsurance clause applies to such a loss, the insured will ordinarily be obliged to obtain an appraisal of his own to controvert that of the company, regardless of whether the policy imposes any legal obligation to hire an appraiser. It seems to me that the object was to leave the coinsurance clause in force respecting larger losses, but to render it inapplicable where the cost of evaluating the undamaged property would customarily be out of proportion to the extent of the loss. In this case, for example, the sound value of the entire building has been found by the company's appraiser and the umpire to be $1,600,000, whereas the loss was only $6,296.82. One may surmise that if the coinsurance applies to a loss so small in proportion, an insured would prefer to take the $2,459.70 offered in full settlement, however unreasonable it might be, rather than to pay appraisers in an endeavor to refute the figure of $1,600,000 claimed by the company to be the total value of the building. The order appealed from would allow to plaintiff the privilege of accepting the defendant's figures, which it would ordinarily be too expensive to contest. That can hardly have been the purpose of this clause in the policy.

An argument has been made in support of the order appealed from that this language relieving an assured from any obligation with respect to an appraisement of the " undamaged property " refers to losses of items of personal property, and that it has no application to real property except where there are separate buildings covered by the same fire insurance policy. Although it is not discussed specifically in the opinion, Special Term appears to have rejected this argument, which is based on the premise that there can be no undamaged real property in a building, however large, that has been touched by a fire, however small. It seems clear that whatever advantage is given to an assured by this proviso relates to partial losses to buildings as well as to personal property covered by such insurance.

The construction of this proviso should be reasonable, and in order that it shall serve a reasonable purpose, it seems to us that it must be construed to exempt small losses within its definition from the operation of the coinsurance formula. To construe it in that manner does not reflect adversely upon the general validity of coinsurance limitations, but results in the conservation of a good deal of useless procedural expense by applying the money in payment of small losses.

Even apart from this proviso, the view has been expressed in Appleman on Insurance Law and Practice (Vol. 6, § 3866, pp. 221–222), Corpus Juris Secundum (Vol. 45, § 917, subd. b, n. 41, p. 1021), and Couch, Cyclopedia of Insurance Law (Vol. 2, 1945, Cum. Supp., § 1845, p. 2129) that small losses should be exempted from the application of the coinsurance clause. (See *Pinsky* v. *Minneapolis Fire & Marine Ins. Co.,* 225 App. Div. 326, 329.)

The order appealed from should be reversed and appellant's motion to dismiss the partial defense should be granted, with costs to the appellant.

Peck, P. J.. Cohn and Callahan, JJ., concur in decision; Van Voorhis, J., dissents in opinion in which Glennon, J., concurs.

Order affirmed, with $20 costs and disbursements. No opinion. [184 Misc. 846.] [See 275 App. Div. 697.]