OPINION OF THE COURT
William D. Friedmann, J.
This commercial nonjury trial placed in focus certain aspects of a secured Uniform Commercial Code triangular transaction, involving the purchase of restaurant and kitchen equipment. Through the use of a secured conditional sales contract (possession by purchaser and title in seller), a down payment was made by the debtor restaurant operator to the equipment seller, accompanied by promissory notes, secured by a security agreement, and personal guarantees. Shortly thereafter, or simultaneously therewith, the security agreement was assigned, and the notes indorsed over to a finance company (plaintiff) by the equipment seller. The plaintiff finance company, claiming holder in due course status, thereafter collected the notes from the debtor pursuant to their terms. Upon default in payment plaintiff exercised its dual rights of debt enforce *964 ment and collateral disposal by reassignment for such purpose.
CONTENTIONS OF THE PARTIES
Upon trial, plaintiff contended that it became a holder in due course and was entitled to the balance due on the notes it had acquired by assignment, after default thereon, together with 15% legal fees. Defendants (the debtor and a personal indorser) interposed a general denial, and upon trial, questioned plaintiff’s holder in due course status. Defendants’ posttrial memorandum further questioned the form of the triangular transaction by asserting that moneys were loaned directly by plaintiff to debtor defendant, with some vague hint of transaction impropriety or illegality. That following default, there was an improper reassignment of the security (equipment) back to the seller, while the plaintiff retained the notes. It is argued that this dichotomy of holdership and resulting disposal of security exposed the debtor to possible dual legal action, and that this reassignment, for consideration, by plaintiff, resulted in complete payment and full satisfaction or discharge of the underlying debt.
Plaintiff in its reply posttrial memorandum asserts that defendants should be precluded from raising the issues of improper reassignment or payment, satisfaction or discharge, etc. (even though they have no merit), because defendants failed to plead this matter, by way of affirmative defense, in their answer. Instead, defendants relied upon a general denial (CPLR 3018). Plaintiff, in addition, contends that defendants are not entitled to any credit for the payment it or the seller received upon the disposal of the collateral (equipment) after defendants’ default.
FACTS
Based upon the evidence adduced at the trial, I find the relevant facts to be as follows: The seller sold and installed certain restaurant and kitchen equipment for defendant, Bonny & Clyde Rest. Corp. (hereafter defendant debtor), for $17,499.48. Defendant debtor made a down payment of $7,035 to seller, leaving an unpaid principal balance of $10,464.48. Defendant debtor thereafter executed a series of 24 negotiable promissory notes, payable to seller. Such *965 notes were secured by the execution of a security agreement as collateral security for the unpaid balance of the indebtedness. The notes were thereafter indorsed by defendant, Sabino Spadavecchia, and one other person. The notes were then simultaneously indorsed over to the plaintiff by seller together with an assignment of the security agreement. Defendant debtor paid four notes to plaintiff ($1,744.08), reducing its unpaid balance to $8,720.40. Defendant debtor defaulted on the fifth note, went out of business, and abandoned the equipment. Defendant debt- or’s landlord took possession of the equipment and refused surrender. Pursuant to the recourse agreement, between seller and plaintiff, the security agreement was reassigned by plaintiff to seller for the sum of $4,000, so that seller could take whatever steps were necessary to repossess and preserve the equipment. The notes were retained by plaintiff. Thereafter, the equipment was repossessed by seller and subsequently sold by it to a third party for $4,462.80.
CONCLUSIONS
This court finds from the above facts, and all the evidence adduced at the trial, that the plaintiff became a holder in due course (Uniform Commercial Code, § 3-302). This is supported by both an examination of the essence and form of the secured transaction involved. Moreover, none of the defenses available against a holder in due course (Uniform Commercial Code, § 3-305, subd [2], pars [a]-[e]) have been properly pleaded as affirmative defenses, or for that matter has there been any evidentiary showing that any of the contentions urged, such as improper reassignment, payment or satisfaction, have any basis in law or fact (CPLR 3018).
Where a holder of an instrument covered by the Uniform Commercial Code claims holder in due course status (§ 3-302), as pleaded by the plaintiff in its complaint, those challenging that status, and seeking to avail themselves of the specified statutory defenses available against such holder in due course (§§ 3-304, 3-305, subd [2], pars [a]-[e]; infancy, incapacity, duress, illegality, misrepresentation, discharge, etc.) must plead such defenses and the specifics thereof, pursuant to the requirements of CPLR 3018, in order to prevent trial surprise and prejudice and afford *966 pretrial discovery and disclosure, or be precluded upon trial from interposing and relying upon such defenses. A general denial in a pleading is inadequate to raise such defenses. (De Lisa v Amica Mut. Ins. Co., 59 AD2d 380; Rosenbaum Plus Two Print, v Allstate Ins. Co., 59 AD2d 939.)
Similarly, where a secured party’s right to dispose of collateral after default (Uniform Commercial Code, §§ 9-502, 9-503, 9-504) is procedurally and substantially challenged, such as by the questioning of a reassignment of the security agreement, resulting in payment or satisfaction of the indebtedness, defensive matter must also be raised by affirmative defense, and not by a general denial pursuant to CPLR 3018.
Careful analysis of the provisions of the Uniform Commercial Code relating to the disposal of collateral, after default (art 9, part 5), fails to support defendants’ contention that the same party must be the holder of both the notes and the security agreement. Reliance on a mortgage and mortgage note holder relationship is misplaced. The Uniform Commercial Code defines the rights and duties of a secured party, the debtor and third parties, in precise detail, and by no provision requires that the same entity hold both the security and the debt. Reference to section 13-101 of the General Obligations Law and RPAPL article 13 shows that the unitary statutory treatment of a mortgage and mortgage note real estate relationship is governed quite differently by statute. This court finds that the reassignment to seller of the security agreement, in order to preserve and dispose of the abandoned collateral, in no way constituted full repayment or satisfaction or discharge of the debt and no evidence was received that substantiates such contention. Seller acquired the collection rights of plaintiff under section 9-502 of the Uniform Commercial Code and its rights of possession after default under section 9-503 and the rights and duties of collateral disposal accountability under section 9-504.
Further, the provisions of the Uniform Commercial Code relating to the disposal of collateral, does not support plaintiff’s contention that the net consideration it received directly from its reassignment of the collateral for preser *967 vation and disposal thereof, by the seller, or the sellers ultimate sale of the collateral to a third party, should not be credited towards a reduction of defendants’ indebtedness. Section 9-504 sets forth a secured party’s right of disposal of collateral after default, and outlines the distribution priorities. Section 9-504 (subd [1], par [b]) indicates that after allowance for “reasonable attorneys’ fees and legal expenses”, incurred by the secured party (Uniform Commercial Code, § 9-504, subd [1], par [a]), that the proceeds of disposition shall be applied to “the satisfaction of indebtedness secured by the security interest under which the disposition is made”. Thus, the collateral is disposed of for the debtor’s account and the proceeds credited and the debtor held for any deficiency resulting. Plaintiff’s contention has no statutory foundation, and would produce a most unconscionable result which will not be sanctioned by this court. (See Rights and duties of parties to conditional sales contract as to resale of repossessed property, Ann., 49 ALR2d 15.)
COMPUTATION
As a result of the above findings and conclusions, this court determines that plaintiff is entitled to a deficiency to be incorporated into any judgment entered hereon as follows:
Total original indebtedness represented by 24 notes as $436.02 each: